Patrick J. KISSANE, Individually, and on behalf of all others similarly situated, Plaintiff,

v.

CITY OF ANCHORAGE, a municipal corporation, et al., Defendants.

No. A-14129.

District Court, Alaska,
Third Division, Anchorage.

March 20, 1958.

**734**

McLaughlin & Atkinson, Anchorage, Alaska, for plaintiff.

James M. Fitzgerald, City Atty., Anchorage, Alaska, for defendants.

HODGE, District Judge.

Plaintiff brings this action for a declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 57, Fed.Rules Civ.Proc., 28 U.S.C.A., seeking to declare invalid Ordinance No. 1278 of the City of Anchorage and Chap. 17, S.L.A.1955, as amended by Chap. 171, S.L.A.1957, relating to the establishment of off-street parking facilities; and to enjoin the defendant City and its officers from further proceedings or expenditures under said Ordinance.

The facts in the case are not in dispute, and are principally covered by pre-trial order, as follows: plaintiff Kissane, a taxpayer of the City of Anchorage, is the owner, and resides on the residence property located on Lot 4 of Block 82, Original Townsite of Anchorage, which is within the zoned business district described in Ordinance No. 1278, but the dwelling and lot are used solely as a residence with no immediate use as business property; the City of Anchorage enacted Ordinance No. 1278 on November 26, 1957, providing for levy of special assessments for off-street parking against any and all property within the business district of Anchorage; one-half of the properties within the business district, although zoned for business, are presently residential in character, and used as residences; after enactment of Ordinance No. 1278 the City Council of the City of Anchorage, on the same day, directed the City Engineer to prepare a comprehensive plan for an off-street parking improvement district, encompassing the entire business district, and to incur the necessary expenses; simultaneously, the City Council of the City of Anchorage directed the City Manager to prepare resolutions and ordinances calling for a special election in the City to authorize the issuance of bonds to finance the off-street parking improvements and to incur the necessary expenses.

In addition to this stipulation, defendant presented only the testimony of George O. Matkin, City Engineer, with respect to the proposed plan for such off-street parking facilities, from which

it appears that the plan encompasses one single improvement district, embracing all of the zoned business district of the City of Anchorage; that it provides for from 12 to 14 parking lots for the use of the public, each parcel of land to be assessed being within three hundred feet of a lot; that the assessment of benefits is to be pro-rated in proportion to the cost on a zone system, using a quotient method of assessing such cost per square foot of the property benefited. It also appears that such zones in some cases overlap, but it is provided that in no case shall the assessment be greater than the zone closest to the facility. It is conceded that the true benefit to businesses within the district would be an increase in the number of customers because of the availability of parking facilities; and that the true benefit to residences would be an increased value of the property for business purposes.

Ordinance No. 1278 was passed pursuant to the provisions of the Acts of the Legislature above mentioned. By Chap. 17, S.L.A.1955, the Legislature authorized any incorporated first or second class city to plan, design, construct and operate off-street parking facilities if the city council determines

"that the lack of adequate parking facilities within the city creates congestion, obstructs the free circulation of traffic, diminishes property values, or endangers the health, safety and general welfare of the public."

The Act further provides with respect to financing such improvements (Sec. 6) as follows:

"Within any limitations imposed by Federal Law, cities are hereby authorized to finance off-street parking facilities by issuance of general obligation bonds; parking fees and special charges; Territorial and Federal grants and refunds to the extent available; parking meter revenue; or other monies available to the city for general use; gift, bequest, devise, grant, or otherwise. It is not intended by the Legislature

to confer, or attempt to confer, and debt-incurring power prohibited by the Organic Act of Alaska and later Acts of Congress, but, within such limitations on the power of the Legislature of Alaska, to confer such degree of authority relating to the subject of this Act as may be within the power of the Legislature so to confer."

The 1957 Amendment (Chap. 171, S.L.A.1957) added this new section (Sec. 7):

"Each City is hereby authorized, subject to specific authorization and approval of its city council, to levy special or benefit assessments, equal to the total cost of land and improvements or only a portion thereof, to be assessed against benefited property in proportion to benefit derived, to be paid in not to exceed ten annual installments at interest not to exceed 6% per annum. Such benefit assessments are to be determined in accordance with established Territorial and local special assessment practice, after proper notice and hearing, provided, however, that no assessment shall be levied against property not located in a zoned business district or district within a city."

Plaintiff contends that these Acts and such Ordinance are not valid for the following reasons: (1) Chap. 171, S.L.A. 1957 is invalid because it conflicts with the due process clause and equal protection clause of the Fifth and Fourteenth Amendments to the Constitution; (2) the City of Anchorage has no authority to incur bonded indebtedness in order to finance off-street parking facilities under Public Law 551 of the 79th Congress, Act July 26, 1946, 60 Stat. 701; and (3) the method of levy of assessments under Ordinance No. 1278 is invalid and confiscatory of plaintiff's property, and no special benefits are conferred on plaintiff. These issues of law will be considered in the order named.

(1) The argument in support of plaintiff's first contention appears to be that

Chap. 171, S.L.A.1957 constitutes a "special or local law" in violation of 48 U.S.C.A. § 1471, in that it fails to incorporate the provisions of Secs. 16-1-81 and 16-1-91, A.C.L.A., with respect to the method of creating a local improvement district and assessing benefits generally; and that it is vague and uncertain.

 The Act does not authorize any particular city to provide for such improvements but is applicable alike to each first and second class city. The test as to local or special legislation is correctly quoted in plaintiff's brief from 2 McQuillin Municipal Corporations (3rd Ed.) p. 86:

> "The test is whether the law operates uniformly throughout the state upon all persons and localities under like circumstances. If so, the law is general".

I find no merit in this contention.

 The right to incorporate by reference provisions of Territorial or Federal Law then in effect cannot be questioned. Alaska Steamship Co. v. Mullaney, 9 Cir., 180 F.2d 805, 815. I am of the opinion that reference to the "established Territorial and local special assessment practice" is sufficient to incorporate by reference the method and practice provided by the statutes then in force. The "established practice" thus referred to includes two alternative methods of establishment of local improvement districts, either (1) by petition of property owners to the Council (Sec. 16-1-81), followed by notice of hearing, hearing on objections, levy and notice of assessment; or (2) by general or special ordinance (Sec. 16-1-91), also followed by notice of hearing, hearing of objections, levy and notice of assessment. Ordinance No. 1278 conforms to the latter method; notice and hearing on objections at the beginning of the work is provided for by Sec. 18-46; and notice and hearing of objections to the assessment roll is provided by Sec. 18-48. The inclusion of the words "and local special assessment practice" in the statute authorizing this improvement (Ch. 171,

S.L.A.1957) cannot conceivably have the effect of "special legislation" authorizing local procedure not in conformity with Territorial law.

I am also unable to find that the statute is so vague and uncertain as to render it invalid. This statute, pursuant to the general rule of law, should be sustained if a reasonable interpretation can be given to it.

(2) With reference to the authority of the City of Anchorage to incur bonded indebtedness in order to finance the off-street parking facilities provided by Ordinance No. 1278, Public Law 551, 79th Congress, as amended by Public Law 496, 82nd Congress, Act July 10, 1952, 66 Stat. 574, provides in pertinent part as follows:

> "The City of Anchorage, Alaska, is hereby authorized to issue and sell its bonds in an amount not to exceed $12,500,000 for the purpose of constructing, reconstructing, improving, extending, bettering, repairing, equipping, or acquiring *public works* of permanent character for said city."

> "Sec. 2. *Such public works shall include but not be limited to* water facilities, sewers and sewage-disposal facilities, heating plants and distribution facilities, electric and steam power and light plants, and distribution facilities, telephone plants and distribution facilities, streets and street improvements, corporation or equipment yards, city hall additions, jails, fire halls, libraries, and school buildings." (Emphasis added.)

 It will be noted that the Act provides that the "public works" contemplated shall include but are not limited to those specifically named; hence the rule of "expressio unius est exclusio alterius" does not apply. Sec. 10 of the Act further provides that it shall be liberally construed to accomplish its purpose. In addition to this special Act applying only to the City of Anchorage, reference is also made to 48 U.S.C.A. §

44a providing for bonded indebtedness by municipalities in Alaska for public works, containing a similar clause but limited to 10% of the aggregate taxable value of the property within the corporate limits of the municipality. Provision for such bonded indebtedness in compliance with Acts of Congress was also made by Chap. 17, S.L.A.1955. The term "public works" is defined generally as all fixed works undertaken and carried out by national, state or municipal authorities designed for public use, or for some purpose of public necessity, use or convenience. Black's Law Dictionary, Vol. 4; 35 Words and Phrases, Public Works, p. 433. There can be no question but that the off-street parking facilities here involved constitute public improvements or public works and that the Acts of Congress above mentioned are sufficiently broad to cover the facilities of the character here proposed. See cases infra, 159 F.Supp. 737.

(3) We come now to the more important question of whether or not the method of levy of assessment provided under Ordinance No. 1278 is invalid as confiscatory, or in conflict with the due process clause and equal protection clause of the Fifth and Fourteenth Amendments to the Constitution.

The principle is firmly established that only where an assessment imposed clearly results in such a flagrant and palpable inequality between the burden imposed and the benefits received that it amounts to an arbitrary taking of property without compensation, it violates the due process guaranty of the Fourteenth Amendment. Northern Pacific Terminal Co. of Oregon v. City of Portland, 9 Cir., 80 F.2d 738; Henderson Bridge Co. v. Henderson City, 173 U.S. 592, 19 S.Ct. 553, 43 L.Ed. 823; Branson v. Bush, 251 U.S. 182, 40 S.Ct. 113, 64 L.Ed. 215; Kansas City Southern Ry. Co. v. Road Improvement District No. 3, 266 U.S. 379, 45 S.Ct. 136, 69 L.Ed. 335; Morton Salt Co. v. City of South Hutchinson, 10 Cir., 159 F.2d 897, 901; Larson v. City and County of San Francisco, 182 Cal. 1, 186 P. 757, 763.

It has also been generally held that the determination of assessments by municipal corporations of adjacent property for local improvements is a matter for the city council acting in its legislative capacity, and that such determination is conclusive, in the absence of fraud or conduct so arbitrary as to be the equivalent of fraud, or so manifestly arbitrary or unreasonable as to be palpably unjust and oppressive. Northern Pacific Terminal Co. v. City of Portland, supra; Larson v. City and County of San Francisco, supra; Feldhake v. City of Santa Fe, 61 N.M. 348, 300 P.2d 934, 939; McQuillin Municipal Corporations, Vol. 14, Sec. 38.56, p. 172. Whether a tax is in the form of special assessments or a general tax, the test is substantially the same, that is whether any benefit, direct and tangible or indirect and intangible, will result to the property owner. Morton Salt Co. v. City of South Hutchinson, supra. It is not essential that the benefits must be direct or immediate, although it is essential that they be based on more than mere speculation or conjecture. Kansas City Southern Ry. Co. v. Road District No. 3, supra.

In a leading case of City of Whittier v. Dixon, 24 Cal.2d 664, 151 P.2d 5, 153 A.L.R. 956, the Supreme Court of California held that the levy of special assessments for off-street parking facilities under a California statute is justified if the improvement is a public one and the property to be assessed will receive a benefit, holding that the parking places tend to stabilize a business section by making it readily accessible to trade, and so benefit the property in the vicinity. This decision is followed in Alexander v. Mitchell, 119 Cal.App.2d 816, 260 P.2d 261, 267; and is cited with respect to the constitutionality of the Act and the "public use" (although with respect to condemnation proceedings or acquisition of property for the parking lot), in City of Menlo Park v. Arteno, 151 Cal.App.2d 261, 311 P.2d 135, 141; and Larsen v. City and County of San Francisco, 152 Cal.App.2d 355, 313 P.2d

959, 963. This case is also reported in 153 A.L.R. 956, at page 961, followed by an annotation, in which the editors have this to say:

"Although an extended search failed to disclose any other case in point, the correctness of the decision reached by the Court can hardly be doubted".

Similarly, an assessment of adjacent property held to be benefited to pay for the cost of off-street parking space has been upheld in New York. Ambassador Management Corp. v. Incorporated Village of Hempstead, 186 Misc. 74, 58 N.Y. S.2d 880.

Plaintiff relies wholly upon the case of Northern Pacific Railway Co. v. City of Grand Forks, N.D., 73 N.W.2d 348, wherein the court after an extensive discussion of the subject held that certain property of the Railway Company occupied for railroad tracks, a wholesale grocery business, spur tracks, loading platform, station, and freight house, could not possibly receive any benefit from a public parking lot for which it had been assessed. This decision recognizes special benefits which may obtain to property in a business district but qualifies such rule by holding that special assessments for parking lots which do not give effect to substantial and material differences in the use of the property assessed are not apportioned to benefits as required by the statute; and that the use of a *front foot* method in levying the assessment resulted in more than a just proportion of the cost of the improvement being assessed against the property of the plaintiff. In the case at Bar, as noted above, it is conceded that the property of the plaintiff and others whom he represents would be benefited as business property in that the value of their property will be enhanced by the improvement, although not as residence property.

None of the reported decisions cover the point here raised as to whether or not residence property may be included in the district and assessed for benefits primarily intended for business advantage. Such decision must rest, then, upon the principles discussed above.

■ It must be concluded that as the property involved will receive some benefit, gain or advantage from the proposed improvement, the assessment here contemplated cannot be considered so arbitrary or unjust as to render the method of assessment invalid as a matter of law. If any distinction in the method of assessment between business and residence property is to be made, such must be done by the City Council, acting in its legislative capacity, upon hearing of objections provided for by the Ordinance.

Judgment may be entered in favor of the defendants, dismissing the cause of action herein. No findings of fact or conclusions of law will be necessary. Upon stipulation of the parties each shall bear his own costs and attorney fees.